Filed 5/13/24  In re R.R. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re R.R., a Person Coming Under the Juvenile Court Law. | D082543 |
| THE PEOPLE,    Plaintiff and Respondent    v. | (Super. Ct. No. J244872) |
| R.R.,    Defendant and Appellant, | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard R. Monroy, Judge.  Affirmed.

Michaela Dalton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

After denying R.R.'s motion for an order continuing the proceedings and placing him on informal supervision pursuant to Welfare and

Institutions Code[1] sections 654 and 654.2, the juvenile court held a contested hearing and found true the allegation that R.R. attempted to commit robbery. It declared R.R. a ward of the court and ordered that he be placed under probation department supervision and maintained in the home.

R.R.'s court-appointed counsel filed a brief raising no issues but seeking our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We find no arguable issues and affirm.

## FACTUAL BACKGROUND

In February 2023, O.L. was walking home with his girlfriend M.R. While passing a middle school, the couple noticed that a group of four boys, including R.R., walked behind them and then passed them. After the couple passed the group of boys, the group again started following the couple. The couple crossed the street several times as the group followed them. Ultimately, as the couple walked past the group, someone grabbed O.L. from behind by his backpack. He lost his balance but M.R. pulled him back before he fell.

The boy who grabbed O.L. laughed and said, " 'What's up?' " R.R. said, " "Give me all your shit.' " O.L. saw R.R. unzip his fanny pack and reach inside for something but did not see what it was. This action scared O.L. M.R. also saw R.R. open his fanny pack to display the handle of a firearm before saying, " 'Give me your f'ing stuff.' " This terrified her. When O.L. took a step to advance, the boys started laughing, quickly backed down, and ran across the street. O.L. recognized R.R. from the neighborhood. After verifying R.R.'s identity, he reported the incident to the middle school.

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

R.R., aged 13, was charged by petition with attempted robbery. (Pen. Code, §§ 664 & 211.) He moved for an order continuing the proceedings and placing him on informal supervision under sections 654 and 654.2. The court denied the motion finding informal supervision would not give it adequate information to ensure R.R. did not have weapons or elicit substances, given R.R.'s history of carrying weapons and controlled substances. It also expressed concern about its ability to supervise R.R. informally, citing the need for drug testing and a waiver of Fourth Amendment protections.

At a contested hearing, the court heard testimony from O.L. and M.R. about the incident. Another student at the middle school testified that he asked R.R. if he did it, referring to the attempted robbery, and R.R. answered affirmatively. This student twice saw R.R. with a gun. The assistant principal at R.R.'s middle school testified that she twice counseled R.R. about violating school policy and believed R.R. knew right from wrong.

The court found R.R. knew his conduct was wrong and found true the allegation. At the disposition hearing, R.R.'s counsel submitted based on the probation department's recommendation that R.R. be adjudicated a ward pursuant to section 602 and placed with his mother. The People sought commitment to Urban Camp 85. The court declared R.R. a ward of the court and ordered him placed under the supervision of the probation department and maintained in his home.

## DISCUSSION

Appointed appellate counsel filed a brief summarizing the facts and proceedings below. Counsel presented no argument for reversal but asked this court to review the record for error as mandated by *Wende, supra*, 25 Cal.3d 436. Counsel identified the following issues that "might arguably support the appeal" (*Anders, supra*, 386 U.S. at p. 744) whether: (1) the court

3

erred in denying R.R.'s motion for informal supervision; (2) sufficient evidence existed showing R.R. knew right from wrong and (3) committed attempted robbery; and (4) the court abused its discretion in adjudicating R.R. a ward of the court. We granted R.R. permission to file a brief on his own behalf. He has not responded.

Once a juvenile wardship petition has been filed, the court is authorized to grant informal probation in lieu of declaring the minor a ward of the court. (§ 654.2, subd. (a); *Kody P. v. Superior Court* (2006) 137 Cal.App.4th 1030, 1033.) We review an order denying section 654.2 diversion for an abuse of discretion. (*In re Armondo A.* (1992) 3 Cal.App.4th 1185, 1189.) We will reverse such an order only if the court "has exceeded the limits of legal discretion by making an arbitrary, capricious or patently absurd determination." (*In re Katelynn Y.* (2012) 209 Cal.App.4th 871, 881.)

The court reviewed R.R.'s motion, attached exhibits, R.R.'s grades in school, and the People's response before it denied the motion. The court was clearly familiar with the issues underscoring R.R.'s background, including a school disciplinary record showing R.R. previously punched a fellow student in the face, possessed a pocketknife, marijuana, a vape charger, and vape pens. Given R.R.'s history, the court appropriately concluded he required additional monitoring unavailable on informal supervision, such as drug testing and a Fourth Amendment waiver, to ensure he did not use controlled substances or carry any weapons. This issue is not arguable.

To assess whether there is ample credible evidence supporting the conclusions made by the juvenile court we interpret the evidence favorably toward the prosecution and assume the existence of every reasonable fact deduced from it. (*In re I.A.* (2020) 48 Cal.App.5th 767, 778.) While we consider logical inferences drawn by the court, we disregard those solely

4

based on suspicion or speculation. (*Ibid.*) We will reverse only if no substantial evidence supports the court's findings. (*Ibid.*)

A statutory presumption exists that a child under the age of 14 is incapable of committing a crime. (Pen. Code, § 26.) To overcome this presumption, the prosecution must show by clear and convincing evidence that the child understood the wrongfulness of the charged act at the time of its commission. (*Ibid.*; *In re Gladys R.* (1970) 1 Cal.3d 855, 863.) In making this determination, the court may consider the child's age, experience, and understanding. (*In re Gladys R.*, at p. 864.) The closer children are to the age of 14, the more likely they will appreciate the wrongfulness of their conduct. (*In re Paul C.* (1990) 221 Cal.App.3d 43, 53.) R.R. was 13 years old at the time of the incident. The testimony of the assistant principal at R.R.'s school who counseled R.R. twice on disciplinary matters constituted substantial evidence supporting the court's finding that R.R. knew his conduct was wrongful.

"An attempted robbery consists of two elements: (1) the specific intent to commit the robbery, and (2) a direct, unequivocal, overt act (beyond mere preparation) toward its commission." (*People v. Gonzalez* (2021) 12 Cal.5th 367, 382.) Here, M.R.'s testimony that R.R. stated, " 'Give me your f'ing stuff' " as he displayed the butt of a firearm established R.R.'s intent to commit a robbery. (*People v. Young* (2005) 34 Cal.4th 1149, 1181 [testimony of a single witness suffices to support a conviction unless it is "physically impossible or inherently improbable"].) These substantial evidence issues are not arguable.

Finally, adjudicating R.R. to be a ward of the court is not arguable. The court may proceed in one of three ways when the minor is a person described in section 602. It may: (1) declare the minor a ward of the court;

5

(2) order probation without declaring the minor a ward of the court; or (3) order probation after declaring the minor a ward of the court. (§§ 725, subds. (a) & (b), 727.) In deciding the appropriate disposition, the juvenile court must consider the circumstances and gravity of the offense committed by the minor in addition to other relevant factors and material evidence. (§ 725.5.) Additionally, the court must be mindful of the purpose of the juvenile delinquency laws. "A fundamental premise of delinquency adjudication is that the court must focus on the dual concerns of the best interests of the minor and public protection." (*In re Jimmy P.* (1996) 50 Cal.App.4th 1679, 1684.) Here, R.R.'s disciplinary record and the facts of the incident support the court's conclusion a wardship would serve the best interests of R.R. and the public.

Our review of the record pursuant to *Wende*, including the possible issues listed by counsel pursuant to *Anders*, has disclosed no reasonably arguable issues on appeal. Competent counsel has represented R.R. on this appeal.

## DISPOSITION

The judgment is affirmed.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.